## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **RAYMOND L. JOHNSON** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| | § | |
| v. | § | **CIVIL ACTION NO. 1:17-cv-00808-SS** |
| | § | |
| **CREDIT ACCEPTANCE** | § | |
| **CORPORATION** | § | |
| **Defendant.** | § | |

## MOTION TO DISMISS AND COMPEL ARBITRATION

COMES NOW, Credit Acceptance Corporation ("Credit Acceptance") by and through its counsel, and files this its Motion to Dismiss and Compel Arbitration, and in support thereof would show unto the Court the following, to wit:

## I.     INTRODUCTION

1.     Plaintiff Raymond Johnson ("Plaintiff") filed this suit on August 21, 2017, against Credit Acceptance Corporation ("Credit Acceptance") relating to his purchase and financing of an automobile. He asserts that the underlying agreement cannot be enforce against him because it lacks his "wet signature." *See* Docket No. 1 at 2. However, Plaintiff acknowledged with his "wet signature" that he consented to and applied his electronic signature to the documents. The terms of

the applicable retail installment contract included an arbitration agreement that applied to "any controversy or claim" between the parties.

2.    Credit Acceptance now seeks to dismiss the Complaint and dismissal to compel Plaintiff to arbitrate his claims pursuant to Section 4 of the Federal Arbitration Act ("FAA").  *See* 9 U.S.C. § 4.  The arbitration agreement in question has been routinely and consistently enforced by this Court and others.  *See, e.g., Huanaco v. Experian Information Solutions, Inc.,* Civil Action No. 3:17-cv-00084-DB, Dkt. 44 (W.D. Tex. Sept. 20, 2017) (Briones, J.); *Kelly v. Credit Acceptance,* 2017 WL 1051124 (N.D. Miss. Mar. 20, 2017); *Garcia v. Weltman, Weinberg & Reis Co. of Michigan,* 2014 WL 1746522 (E.D. Mich. Apr. 30, 2014).  Electronic signatures are valid and must be enforced.  *See, e.g.,* 15 U.S.C. § 7001, *et seq.*; *Kelly*, 2017 WL 1051124, at *2.  Accordingly, Plaintiff should be compelled to arbitrate any claims he intends to assert against Credit Acceptance within 60 days and this action should be dismissed with prejudice.

## II.    STATEMENT OF FACTS AND PROCEDURAL HISTORY

3.    Plaintiff purchased and financed a used 2012 Hyundai Genesis automobile from Dream Cars Austin ("Dream Cars") on April 9, 2015.  *See* Exhibit "A" at Ex. 3.  As part of that transaction, he executed a Motor Vehicle Retail

Installment Sales Contract ("RIC").[1]  *See* Exhibit "A" at Ex. 3.  Under the RIC, Plaintiff was required to make 66 monthly payments on the 9th day of each month in the amount of $531.91, beginning on May 9, 2015.  *See* Exhibit "A" at Ex. 3. As Plaintiff acknowledged in the Declaration Acknowledging Electronic Signature Process that he physically signed, Plaintiff "consented to use electronic signatures to sign all documents necessary to process a retail installment transaction with [Dream Cars]."  *See* Docket No. 1-15.

4.     The RIC signed by Plaintiff included an Agreement to Arbitrate ("Arbitration Clause") that provided:

> A "Dispute" is any controversy or claim between You and Us arising out of or in any way related to this Contract, including, but not limited to, any default under this Contract, the collection of amounts due under this Contract, the purchase, sale, delivery, set-up, quality of the Vehicle, advertising for the Vehicle or its financing, or any product or service included in this Contract.  "Dispute" shall have the broadest meaning possible, and includes contract claims, and claims based on tort, violations of laws, statutes, ordinances or regulations or any other legal or equitable theories.  Notwithstanding the foregoing, "Dispute" does not include any individual action brought by You in small claims court or Your state's equivalent court, unless such action is transferred, removed or appealed to a difference court.  "Dispute" does not include any repossession of the Vehicle upon Your default and any exercise of the power of sale of the Vehicle under this Contract or any individual action by You to prevent Us from using any such remedy, so long as such individual action does not involve a request for monetary relief of any kind.

*                *                *

---

[1] The first three pages of the RIC are included as an exhibit to the Complaint.  *See* Docket No. 1-9.  The complete RIC is attached as Exhibit "A" at Ex. 3 to the Motion to Dismiss and Compel Arbitration.

> Either You or we may require any Dispute to be arbitrated and may do so before or after a lawsuit has been started over the Dispute or with respect to other Disputes or counterclaims brought later in the lawsuit. If You or We elect to arbitrate a Dispute, this Arbitration Clause applies. A Dispute shall be fully resolved by binding arbitration. Judgment on the arbitration award may be entered in any court with jurisdiction….

*See* Exhibit "A" at Ex. 3.

5.     After the transaction was consummated, Dream Cars assigned the RIC to Credit Acceptance. *See* Exhibit "A" at Ex. 3, p. 5. The Certificate of Title that was subsequently issued by the State of Texas based upon the RIC reflected that Plaintiff was the "OWNER" of the vehicle and that Credit Acceptance was the "1ST LIENHOLDER." *See* Exhibit "A" at Ex. 6

6.     Plaintiff made various payments under the terms of the RIC on the vehicle over the next year, but ultimately defaulted in 2016. *See* Exhibit "A" at ¶ 7.

7.     On November 18, 2016, Plaintiff wrote to Dream Cars, raising various complaints about the terms of the underlying transaction.[2] *See* Exhibit "A" at Ex. 8. In his letter, Plaintiff stated: "I, Raymond Johnson have some serious questions about this Motor Vehicle Retail Installment Contract or (RIC) that I ***signed*** on April 9, 2015." *See* Exhibit "A" at Ex. 8 (emphasis added).

---

[2] Although directed to Dream Cars, the letter was sent to Credit Acceptance's address. *See* Exhibit "A" at Ex. 8.

8.      Plaintiff filed this *pro se* action on August 21, 2017.  *See* Docket No. 1.  He disputed the entire underlying transaction contending that certain documents failed to bear his "wet signature" and were "fraudulent."  *See* Docket No. 1 at 1-2. The Complaint asserts claims for, *inter alia*, breach of contract, deception, Truth-in-Lending violations, Gramm-Leach-Bliley violations, and fraud.  *See* Docket No. 1 at 4-6.  He demanded at least $1 million in damages.  *See* Docket No. 1 at 7. Attached to the Complaint were numerous documents from the underlying transaction, including those Plaintiff executed electronically and with his "wet signature."  *See* Docket No. 1 at 1-1 to 1-23.

## II.     ARGUMENT

### A.     The FAA Is Applicable to This Action.

9.      "Arbitration is favored in the law."  *See Grigson v. Creative Artist Agency, L.L.C.*, 210 F.3d 524, 526 (5th Cir. 2000).  The FAA is the embodiment of the "liberal federal policy favoring arbitration agreements."  *See Green Tree Financial Corp. - Alabama v. Randolph*, 531 U.S. 79, 91 (2000) (quoting *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24, (1983)) (internal quotation marks omitted).  Therefore, any determination of arbitrability must be made with a "healthy regard for the federal policy favoring arbitration." *See Bhatia v. Johnston*, 818 F.2d 418, 421 (5th Cir. 1987) (quoting *Moses H. Cone*, 460 U.S. at 24-25) (internal quotation marks omitted).

10.    The Arbitration Clause falls squarely within the ambit of the FAA. *See* Exhibit "A" at Ex. 3.  Section 2 of the FAA provides that "[a] written provision . . . in a contract evidencing a transaction involving commerce to settle by arbitration an existing controversy arising out of such a contract . . . shall be valid, irrevocable, and enforceable."  *See* 9 U.S.C. § 2.  The term "commerce" as used in the FAA means interstate commerce.  *See* 9 U.S.C. § 1.  The Supreme Court has "interpreted the term 'involving commerce' in the FAA as the functional equivalent of the more familiar term 'affecting commerce' – words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power."  *See Citizens Bank v. Alafabco, Inc.,* 539 U.S. 52, 56 (2003).

11.    The Supreme Court has further concluded that, "[b]ecause the statute provides for 'the enforcement of arbitration agreements within the full reach of the Commerce Clause,' . . . it is perfectly clear that the FAA encompasses a wider range of transactions than those actually 'in commerce' – that is, 'within the flow of interstate commerce.'"  *Id.* at 56 (citations omitted).  Moreover, the FAA applies even if the individual transaction, "taken alone, did not have 'a substantial effect on interstate commerce' . . . [because] "Congress' Commerce Clause power 'may be exercised in individual cases without showing any specific effect upon interstate commerce' if in the aggregate the economic activity in question would represent 'a general practice . . . subject to federal control.'"  *Id.* at 56-57 (citations omitted).

Indeed, where a business is national in scope (as is Credit Acceptance's business here), the FAA governs disputes about arbitrability. *See, e.g., Graphic Scanning Corp. v. Yampol*, 850 F.2d 131, 133 (2d Cir. 1988) (concluding that FAA applied where employer operated in several states).

12.     The Arbitration Clause was contained in "a contract evidencing a transaction involving [interstate] commerce" and represented "an agreement in writing to submit to arbitration an existing controversy arising out of" the transaction at issue. *See* Exhibit "A" at Ex. 3.  Plaintiff is a citizen of Texas, while Credit Acceptance is a Michigan corporation. *See* Docket No. 1 at 1; *see also Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 281 82 (1995) (finding FAA applicable to consumer transactions); *Roberson v. Money Tree of Alabama, Inc.*, 954 F. Supp. 1519, 1523 (M.D. Ala. 1997) (finding FAA applicable to consumer loan agreement which "involv[ed] commerce").

13.     Further, the Arbitration Clause also expressly provides that "this Contract evidences a transaction in interstate commerce" and "is governed by the FAA and not by any state arbitration law." *See* Exhibit "A" at Ex. 3.  Courts consider such language evidence of the satisfaction of the interstate commerce requirement. *See, e.g., Volt Info. Sciences, Inc. v. Bd. of Trustees*, 489 U.S. 468, 479 (1989) (noting that courts should "'rigorously enforce' [arbitration] agreements according to their terms"); *Boone v. Toyota Motor Credit Corp.*, 2003

WL 1740452, at *2 (S.D.N.Y. Apr. 2, 2003) (finding that "the plain language of the contract provides for the application of federal law to the arbitration clause"); *see also Credit Acceptance Corp. v. Davisson*, 644 F.Supp.2d 948, 954 (N.D. Ohio 2009) (finding FAA applied because "the Contract itself provides that '[t]he Federal Arbitration Act governs this Arbitration Clause . . . .  The Arbitration Clause is governed by the Federal Arbitration Act . . . and not by any state arbitration law.'"); *Staples v. The Money Tree, Inc.*, 936 F. Supp. 856, 858 (M.D. Ala. 1996) (finding that FAA applied where contract provided that "Creditor and Debtor acknowledge and agree that the Contract involves 'commerce' as defined in the United States Arbitration Act"); *Thomas O'Connor & Co. v. Ins. Co. of North America*, 697 F. Supp. 563, 566 (D. Mass. 1988) (finding that FAA applied where contract provided that it "evidences a transaction involving commerce" and that the arbitration clause was "governed by and enforceable under" the FAA).  The FAA, therefore, governs the enforcement of the Arbitration Clause.

**B.    The Arbitration Clause is Valid and Applicable to Plaintiff's Claims.**

14.    When considering a motion to compel arbitration, a court must initially "determine whether the parties agreed to arbitrate the dispute in question." *See Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996).    "This determination involves two considerations:  (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within

the scope of that arbitration agreement." *See Webb,* 89 F.2d at 258. Because of the "strong presumption in favor of arbitration . . . a party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity." *See Lora v. Providian Bancorp Services,* 2005 WL 1743878, at *2 (W.D. Tex. Jul. 22, 2005).

### 1. The Arbitration Clause is a Valid and Enforceable.

15. Plaintiff electronically executed the RIC in order to finance his purchase of the automobile. *See* Exhibit "A" at Ex. 1. Thus, the Arbitration Clause in the RIC is "a valid agreement to arbitrate between the parties." *See Webb*, 89 F.2d at 258.

16. Arbitration provisions must be enforced "according to their terms." *See AT&T Mobility LLC v. Concepcion,* 563 U.S. 333, 339 (2011). "Contracts require mutual assent to be enforceable. Evidence of mutual assent in written contracts generally consists of signatures of the parties and delivery with the intent to bind." *See Baylor Univ. v. Sonnichsen,* 221 S.W.3d 632, 635 (Tex. 2007) (citations omitted). Under both federal and state law, assent may be established through electronic signatures. *See* 15 U.S.C. § 7001(c)(1); Tex. Bus. & Comm. Code § 322.007. Thus, courts have consistently recognized that electronic signatures on arbitration agreements, including this Arbitration Clause, are valid and enforceable. *See Mayton v. Tempoe, LLC,* 2017 WL 2484849, at * 3-4 (W.D.

Tex. Jun. 7, 2017); *Kelly*, 2017 WL 1051124, at \*2; *Thick v. Dolgencorp of Texas, Inc.*, 2017 WL 108297, at \* 2-3 (E.D. Tex. Jan. 11, 2017).

17.    "The element of mutual assent may [also] be inferred from the parties' conduct."  *See KW Const. v. Stephens & Sons Concrete Contractors, Inc.,* 165 S.W.3d 874, 885 (Tex. App.-Texarkana 2005); *Buxani v. Nussbaum,* 940 S.W.2d 350, 352 (Tex. App.-San Antonio 1997).  "[I]f a party by its conduct recognizes a contract as valid, having knowledge of all relevant facts, it ratifies the contract." *See City of the Colony v. North Texas Municipal Water Dist.,* 272 S.W.3d 699, 732 (Tex.App. – Fort Worth 2008).  In particular, "performance" under a contract operates to ratify its terms.  *See Independent Paving Co. v. City of Bay St. Louis,* 74 F.2d 961, 963 (5th Cir. 1935).

18.    While Plaintiff contends that the documents he electronically executed were "fraudulent," *see* Docket No. 1 at 1, his allegations are belied by the exhibits to his Complaint and those "contracts control."  *See Campbell v. DLJ Mortgage Capital, Inc*., 628 Fed. Appx. 232, 234 (5th Cir. 2015) (citing *Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 440-41 (5th Cir. 2015)).  By physically executing the Declaration Acknowledging Electronic Signature Process, Plaintiff "consented to use electronic signatures" in the underlying transaction.  *See* Docket No. 1-15.  He assented to the RIC (including the Arbitration Clause) by affixing his

electronic signature to it.[3]   *See* Exhibit "A" at Ex. 3.   He also made multiple payments under the RIC toward the fulfillment of his contractual obligations.  *See* Exhibit "A" at ¶7.  His "performance" under the RIC constitutes both assent to and ratification of all its terms.  *See Independent Paving,* 74 F.2d at 963; *Kelly,* 2017 WL 1051124, at *2; *City of the Colony,* 272 S.W.3d at 732.   Through both his electronic signature and payments, Plaintiff established his "intent to [be] b[ound]" by the terms of the RIC.  *See Sonnichesen,* 221 S.W.3d at 635.

19.   Moreover, Plaintiff expressly asserts a claim for "Breach of contract" against Credit Acceptance.  *See* Docket No. 1 at 4.  Having acknowledged the existence of a contract between the parties, he cannot now "avoid other parts of the same transaction that [he] views as a burden – namely, the [A]rbitration [Clause]." *See Washington Mutual Finance Group, LLC v. Bailey*, 364 F.3d 260, 268 (5th Cir. 2004).  Thus, the Arbitration Clause is "a valid agreement to arbitrate" based upon Plaintiff's electronic signature, performance, and the claims he has asserted.  *See Kelly,* 2017 WL 1051124, at *2.

---

[3] Plaintiff also effectively concedes that the Arbitration Clause is binding by arguing that Credit Acceptance is "in dishonor by refusing to arbitrate," even though he has not commenced an arbitration.  *See* Docket No. 1 at 4.  In the letter he sent to Dream Cars on December 26, 2016, he also stated that he was "Requesting Arbitration Due To Signature Fraud."  *See* Docket Nos. 1-19 & 1-21.

**2.   Plaintiff's Claims are Within the Scope of the Arbitration Clause.**

20.    Plaintiff's claims also "fall[] within the scope" of the Arbitration Clause. *See Webb*, 89 F.2d at 258.  Arbitration provisions that apply to "all claims, demands, disputes or controversies of every kind or nature" are deemed to be very broad and cover all possible claims that might arise. *See Municipal Energy Agency of Miss. v. Big Rivers Electric Corp*., 804 F.2d 338, 342 (5th Cir. 1986); *In re Sedco, Inc*., 767 F.2d 1140, 1145 (5th Cir. 1985) ("[i]t is difficult to imagine broader general language than . . . 'any dispute'").  Further, to the extent there is any doubt concerning the scope of the Arbitration Clause, it must be resolved in favor of coverage. *See Houston Refining, LP v. United Steel, Paper and Forestry, Rubber, Mfg.,* 765 F.3d 396, 412 (5th Cir. 2014); *Harvey v. Joyce*, 199 F.3d 790, 793 (5th Cir. 2000).

21.    By its explicit terms, the Arbitration Clause covers "any controversy or claim between You and Us arising out of or in any way relating to this Contract." *See* Exhibit "A" at Ex. 3.  All of Plaintiff's claims relate to the RIC under which he purchased and financed the vehicle. *See* Docket No. 1.  Any such claims, both *ex contractu* and *ex delicto*, must be arbitrated. *See Grigson*, 210 F.3d at 527 (holding that arbitration may not be avoided "by casting . . . claims in tort, rather than in contract.").  All doubts concerning the scope of arbitrable issues, "'should be resolved in favor of coverage.'" *See Houston Refining,* 765 F.3d at

412.   Thus, "all of [Plaintiff's] claims fall within the scope of the arbitration agreement" and must be arbitrated.  *See Kelly,* 2017 WL 1051124, at *2.

## C.   This Action Should Be Dismissed.

22.   Because all of Plaintiff's claims are subject to arbitration, this action should be dismissed with prejudice.  The Fifth Circuit has long acknowledged that when claims are subject to arbitration dismissal with prejudice is proper.  *See Alford v. Dean Witter Reynolds, Inc.,* 975 F.2d 1161, 1163 (5th Cir. 1992) (affirming order compelling arbitration and dismissing claims with prejudice). Thus, this Court has also found that "dismissal with prejudice is proper" if all the claims against a party are subject to arbitration.  *See Hays v. HCA Holdings, Inc.,* 2015 WL 5737963, at *9 (W.D. Tex. Sept. 30, 2015) (Sparks, J.); *Garza v. Henry,* 2015 WL 11669640, at *1 (W.D. Tex. Jan. 12, 2015) (Garcia, J.).  This action should be dismissed with prejudice and Plaintiff should be ordered to commence any arbitration he intends to assert within sixty (60) days.  *See Westbrook v. JAG Industrial Services, Inc.,* 2015 WL 93447, at *6 (N.D. Tex. Jan. 1, 2015) (compelling arbitration and providing that "if he chooses, Plaintiff may commence arbitration within 60 days of this Order.").

## IV.   CONCLUSION

23.   The Arbitration Clause is valid and enforceable.  *See Kelly,* 2017 WL 1051124, at *2.  All of Plaintiff's claims against Credit Acceptance are within the

scope of the Arbitration Clause.  Accordingly, this litigation should be dismissed with prejudice and Plaintiff should be compelled to arbitrate any claims he intends to assert against Credit Acceptance within sixty (60) days.  *See* 9 U.S.C. § 4.

WHEREFORE, PREMISES CONSIDERED Credit Acceptance prays that this action be dismissed with prejudice and that Plaintiff be compelled to arbitrate any claims against Credit Acceptance within sixty (60) days.  Credit Acceptance further prays for general relief.

THIS 4th day of October, 2017.

Respectfully submitted,

By:  */s/ Matt D. Manning*
     OF COUNSEL

     Matt D. Manning (#24070210)
     MCGLINCHEY STAFFORD, PLLC
     1001 McKinney Street, Suite 1500
     Houston, Texas  77002
     Telephone:  (713) 520-1900
     Facsimile:   (713) 520-1025
     mmanning@mcglinchey.com

     *Attorney for Defendant*
     *Credit Acceptance Corporation*

## CERTIFICATE OF SERVICE

I do hereby certify that on the 4th day of October,2017, I served via United

States Mail, postage prepaid, a true and correct copy of the foregoing to:

**Via Certified Mail/Return Receipt Requested 9414 7266 9904 2059 5441 27
and Via Regular Mail**
Raymond L. Johnson
P.O. Box 171161
Austin, TX 78717

This the 4th day of October, 2017.

*/s/ Matt D. Manning*
Matt D. Manning

309604.1